Good afternoon, your honors. May it please the court. My name is Jonathan Dunton and I represent the petitioner, Jose Carranza, in this matter. I'll be speaking for eight minutes and will reserve two minutes for rebuttal. We come before you today to ask for a remand of this case to the Board of Immigration Appeals for three reasons. First, that the board failed to consider the totality of the changed and extraordinary circumstances that justified Mr. Carranza's late Second, that the board violated the petitioner's due process by denying his right to apply for asylum, not having been advised of the right to do so. And finally, that no reasonable trier in fact could have found that Mr. Carranza would not have, will not suffer torture or persecution on account of being a police officer in El Salvador and that his police department would be able or willing to protect him. Regarding that first issue, your honors, the matter that has been grappled with is whether the respondent or the petitioner's pending adjustment application was sufficient cause for focus for not finding sufficient change circumstance on both the transcript and on the board's decision. The focus is always that he was out of status while the application was pending and therefore it does not toll his status to say that it was timely. But what we submit... Is it fair to say that the IJ made findings on this issue? The IJ made factual findings on the issues that are before us, correct? Yes, your honor. And those factual findings were approved by the board, correct? Yes, your honor. What is your burden to show that under those circumstances we have to overturn the trial judge who was looking at all of the evidence, including your client, and the board which has already reviewed it? Your honor, the issue is that the board's decision when it grapples with change circumstance or extraordinary circumstance, it only focused on the application not tolling his status. And what we were hoping to see was analysis of the combination of factors, which was that he was reliant on the application which was pending, that the recency of country conditions reports and specifically an article that talked about a police officer being shot at his home just during the the trial, and then threats to assume a culmination of all those facts together should be sufficient change circumstance. And we're not arguing that it was tolling, that his status was tolled by the application, but it was simply a factor who it should be considered, just as we referenced in the sister circuit in Lumetaw. I think you're right on those issues, but like what we do with trial courts, we require some assistance from the lawyers to bring the issue before us. Is that true with the board and with the board's decision that affirmed the IJ? Was it necessary for you to make these specific challenges, and if so, did you? Well, yes, your honor. If we look to the administrative record, we break into two parts the argument that is both that the totality of circumstances is either change circumstances or extraordinary circumstances, but on the decision of the board, the decision rests solely on that the application does not toll his status, and there's no mention in the decision as to the other facts that we had raised that should suffice for that change in circumstance. Was there an objection then filed with the board? No, your honor. But my understanding is you did tell the board that you thought the IJ had not discussed the changed country conditions that you are arguing excused the asylum delay. I think it's at page 18 in your petition to the BIA? That's correct, your honor. We also asked the board to consider the country condition reports that were on the heels of the decision, which illuminated the increased violence against police officers, which would further explain why the petitioner, although at the time may have only had a subjective belief, a subjective fear of harm, manifested to an objective fear once those articles came out and he was made aware of the circumstance that he may be going back to. So could I ask you, it seems like, as I understand it, you have a good argument that the BIA did not address the changed country conditions issue and neither did the IJ, but if we say they failed to consider that and remand for them to consider it, will you be able to show that the changed country conditions are enough to excuse the delay? Was there enough of a change? I do believe so, your honor, because those were circumstances that were not in existence. It was an extension of what was going on while he was in El Salvador, but the increase was so dramatic that it was sufficient to cause him the emotional harm, the psychological harm, which we believe we would be able to flesh out at the trial level. Counsel, let me ask you, it seems to me that at some points in the and changed country conditions, it's not just a changed circumstance. If you're going on that leg of it, it has to be changed country conditions, is my understanding. And when I went to the record before the IJ at 264-269, where you're talking about these human rights reports, is that the best place for there being changes as opposed to things are simply very bad? Because when I read it, you cite the 2013 report, you cite the 2012 report, but it all seemed to be things are very bad in El Salvador, not, you know, suddenly there's a new wave of persecution the way we get in, you know, some country situations. Is that the best place to look for how you made the case or is there other places I should look? I think that would be the location, Judge. And what we were trying to establish in an argument regarding the totality of the change and extraordinary circumstances, that all the facts that were presented in both of those arguments should be considered. Do you have any, what's your best law that you get to aggregate them? I always thought those were two different ways of getting to excuse the one-year limit, that extraordinary circumstances is usually I was sick, my lawyers a crook, you know, whatever, and changed country conditions is things are very bad in El Salvador and they have started to persecute Christians or Jews or police officers. And so the part I'm having some trouble with is the changed country conditions. How much is different as opposed to how much is just bad? I understood the question, Your Honor. What we would be submitting is that the change in country conditions in and of themselves may not be enough to justify the remand. But when we consider those facts along with the extraordinary circumstances, that that should be sufficient to establish the remand. And the extraordinary circumstances of this concatenation of pending applications for adjustment and so on. Is that right? That's correct, Judge. Also, the respondent relying on the discussions between his attorneys and the courts that the adjustments seem to be the correct path to go. Those are circumstances that maybe by themselves would also not support a finding of an the totality of all the allegations presented that that would be. With the time remaining, I would reserve for rebuttal. Thank you, Your Honors. Thank you. Good afternoon. Greg Pennington for the Attorney General. I'll start with your point, Judge Friedland, about the board not addressing this. The IJ erred by exception to the one-year deadline. So if the court's gonna disagree with what I'm about to say, I would agree that the board didn't say anything about that. And remand would be the proper course for it to consider it in the first instance. But I would like to take you back to the proceedings before the IJ, before we get there. So if you look at everything that was said during the removal proceeding, once this, once Mr. Carranza wanted to apply for asylum rather than just withholding, if you look at his asylum application, the declaration that he submitted with his asylum application on why he didn't file within one year, his lawyer's written arguments as to why he should be accepted from the one-year deadline. Everything was about him thinking that he had a lawful status in the immigration judge, that changed country conditions materially affected his eligibility for asylum, and thus he should be excused. So I would say that once it gets to the board, and if you look at his appeal brief, you know, eight pages of the argument aligns with that, and then he has this one paragraph that the immigration judge failed to consider the country conditions. I would say that the way it's been presented throughout the proceeding, the removal proceeding, should be harmless error on the board's part for not addressing it, because it really wasn't an issue during the removal proceeding, and it wasn't addressed in the IJ's decision, because it was never raised to the IJ. What can a disappointed person in the, before the board do, can they petition for rehearing and call it to the attention of the board and have argument, or is there any way that they can have an opportunity to criticize the board for the decision? Yes, Judge. So the, there is a statutory mechanism. A non-citizen can file a motion to reconsider if they believe the board has made an error of fact or law. So if an appellant before the board thinks that there was an argument that was overlooked, there is a statutory mechanism. That's what I thought. Was one filed in this case? Not to my knowledge, no. So, so the whole point here is that the argument was that he thought he had lawful status and that he wasn't applying, and if you look at the beginning of the removal proceeding, this was in September of 2009, after he had his first hearing. He said he wanted to reserve the right to apply for withholding of removal and protection under the Convention Against Torture, and the immigration judge told him, this is AR 94, the judge says if you're gonna file for something besides adjustment of status, you need to do it. So he was aware that, or at least his attorney was aware, that withholding might be a possibility in his case, and the judge said, well if there's anything besides adjustment, you need to get it in. There's nothing that prevents the two applications being considered on the same track. He could have easily asked for a continuance to await the adjustment of status application. So we get to the point where he admits that he doesn't have lawful status, at least, at the very least, even if you accept his argument that his work permit provided him with some sort of status, which it did not, but even subjectively, he said that he knew he no longer had status in October of 2010. Sorry, can I interrupt and ask you a question on a different topic? On the withholding claim, it seems that the BIA said that any risk to him was not countrywide, and I'm a little bit confused by that, because it seems like maybe the BIA could have said, I don't think the risk to police officers is bad enough, but it does seem like the evidence he had was countrywide, as I understand it, and so I don't really understand. It seems like a key part of the BIA's reasoning was the statement that it wasn't countrywide, and I'm not sure that's supported. Can you respond to that? Yes, so I do agree that that I'm not sure, because the immigration judge didn't make any findings on whether he could relocate or whether this was countrywide, and the board said specifically, and my only response would be that the bulk of his argument on withholding before the BIA was that Matter of Fuentes, a decision which involved former police officers, supported his position, and so I think what the board was doing was looking at Matter of Fuentes to respond to his appellate arguments and saying, well, Matter of Fuentes says this, this, and this, and one of the points in Matter of Fuentes, which was a 1998 decision, was that the fear was not countrywide, and I think that was before the regulations on relocation went into effect in Matter of Fuentes in 98, so I think what the board did might have been a misstep, but I would say based on the other factors, it did consider that it should be harmless, because the immigration judge made several other findings, which the board also noted, including his return trips to El Salvador, you know, why he was under this fear. So usually we have a rule that we only uphold agency decisions on the grounds given by the agency, and here it seems like we have two areas where you're arguing we should just treat things as harmless, not addressing this changed country conditions. I mean, maybe the BIA could have just said he never raised that. That would have been a valid thing to say, but instead they said nothing, and then here they have this statement in the middle of the withholding analysis that seems to just be wrong. So why shouldn't we remand for the agency to look at this again and explain it better? That's certainly an option. I just, you know, I know the ordinary remand rule is the rule, and if there is error, but I would say that there is enough to support its decision otherwise. So if you look at the other things the immigration judge said about withholding and removal, those findings are supported by substantial evidence. So if you take out this this countrywide, and I would back up and say that Mr. Carranza hasn't argued any error here, so the court would be... He does say, they say my evidence wasn't countrywide, but my Okay, I do know that he acknowledged, you know, some of these other findings, and then he goes into this, you know, disfavored group analysis, which, you know, was not presented to the board. So I would say that there is enough to say that substantial evidence supports the decision as a whole, but if the court disagrees with that, then remand would be the proper course to let the agency consider these issues in the first instance. So the only issue we haven't talked about is the Convention Against Torture claim. I would say that there is no error in the agency's decision there. Substantial evidence supports it. Particularly, you know, the immigration judge found there was no past torture. The immigration judge talked about the return trips, which, under this court's precedent, undercuts a claim of a well-founded fear, or a more likely than not fear, that someone will be persecuted in their country. And also that the police actually helped him on several occasions, or helped his son after he left, and going to help him when his son had the extortion demand from the gangs, and helped him move to a new house, that he hasn't shown that the government would acquiesce in any torture. Is he a removal priority? Is there any hope of mediation here? I'm never opposed to participating in mediation. I don't know about the removal priority. I wouldn't, I would guess he would not be, but there is a criminal conviction for the indecent exposure. I don't know how DHS would view that, but I would, I'm never opposed to participating in mediation, if you'd like to also send it that way. Sir, if there are no other questions, we would ask the court to deny the petition for review. Let's give you a minute for rebuttal. Thank you, Judge Freeland. So, in regards to the harmless error, well, we would submit that the error would be significant in that he would be precluded from pursuing asylum. In regards to the documentation establishing that it was countrywide, on petitioner's brief at page 19, we do note that the immigration judge recognized extensive documentation that was submitted in the case, in which we that the petitioner would have to be dealing with if he was to return. So, on that basis, we would ask that the court consider that it was a significant error on the part of the board. Also, in regards to Mr. Camarena's, excuse me, Mr. Carranza's claim regarding a future harm, it has been established through all the other country conditions reports and his testimony regarding an article that he and the threats towards his son and menacing text messages to his mother in culmination of all these facts should give light that it would be more likely than not in his circumstance based on what he's dealt with and what he's going back to that would support a finding of withholding of removal. And with that, Your Honor, I submit the case. Thank you both sides for the helpful arguments. This case is submitted.
judges: WALLACE, Boggs, FRIEDLAND